NUMBER 13-03-038-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG 
                                                                                                                      

TINA BRUNO, INDIVIDUALLY, AND
AS NATURAL GUARDIAN OF CHARLES
BRUNO, A MINOR, AND JASIME BRUNO, 
A MINOR; IN THE MATTER OF CHARLES
W. BRUNO, DECEASED,                                                    Appellants,

v.

TRINITY UNIVERSAL INSURANCE
COMPANY OF KANSAS,                                                            Appellee.
                                                                                                                                      

On appeal from the 281st District Court of Harris County, Texas.
                                                                                                                      

MEMORANDUM OPINION

Before Justices Hinojosa, Yañez, and Garza
Memorandum Opinion by Justice Yañez
 
          This appeal involves the bench trial of a workers’ compensation case in which the
trial court found that Charles Bruno (“Charles”), deceased, was not in the course and scope
of his employment at the time of his death. In two issues, his widow, Tina Bruno (“Bruno”),



appeals the trial court’s judgment in favor of appellee, Trinity Universal Insurance Company
of Kansas (“Trinity”), contending: (1) the evidence is legally and factually insufficient to
support the trial court’s judgment; and (2) the trial court improperly shifted the burden of
proof by requiring her to introduce evidence supporting the Texas Workers’ Compensation
Commission decision and order. We affirm. 
          As this is a memorandum opinion and the parties are familiar with the facts, we will
not recite them here except as necessary to explain the Court’s decision and the basic
reasons for it.


 
I. Standard of Review 
          The workers’ compensation statutes provide that in a review by a district court of a
final decision of a commission appeals panel regarding compensability, eligibility, death
benefits, or income benefits, the party appealing a decision of an appeals panel has the
burden of proof by a preponderance of the evidence.


 Issues regarding compensability are
subject to a modified de novo review.


 Here, because Trinity appealed the decision of the
appeals panel, it had the burden to prove, by a preponderance of the evidence, that
Charles was not in the course and scope of his employment at the time of his death.
          A review is limited to those issues decided by the appeals panel.


 In a bench trial,
the court shall consider “the decision of the commission appeals panel” in rendering its
judgment.


 The factfinder, however, is not required to accord the decision any special
weight.


 In addition, the labor code allows the admission into evidence of the commission’s
“record.”


 
II. Legal and Factual Sufficiency
          When we review a "no evidence" or legal sufficiency of the evidence issue, we must
consider all of the record evidence in a light most favorable to the party in whose favor the
verdict has been rendered, and indulge in that party's favor every reasonable inference
deducible from the evidence.


 When both legal and factual sufficiency issues are raised,
we must first review the legal sufficiency to determine if there is any evidence of probative
value to support the judge's findings.


 The findings of fact must be upheld if there is more
than a scintilla of evidence in support thereof.


 There is more than a scintilla when the
evidence creates more than a mere surmise or suspicion of its existence.


 
          If the findings are supported by legally sufficient evidence, we must then review the
factual sufficiency of the evidence.


 When we review an "insufficient evidence" or factual
sufficiency of the evidence issue, we consider, weigh and examine all of the evidence
which supports or undermines the finding.


 We set aside the verdict only if it is so against
the great weight and preponderance of the evidence as to be manifestly unjust.


 Because
the trier of fact is the sole judge of the credibility of the witnesses and the weight to be
given their testimony, we may not substitute our judgment for that of the fact finder's
conclusions.



III. Applicable Law
          Whether an injury was received by an employee under circumstances bringing it
within the course of employment is usually a question of fact governed and controlled by
the particular facts of each case.


 An insurance carrier is liable for an employee's injury
under the workers’ compensation statute if, at the time of the injury, the employee was
subject to the act and the injury arises out of and in the course and scope of employment.



In other words, an employee must establish that the injury: (1) was sustained while
engaged in or about the furtherance of the employer's affairs or business; and (2) was of
a kind and character that had to do with, and originated in, the employer’s work, trade,
business, or profession.


 
          “Most courts which have considered the question regard an employee whose work
entails travel away from the employer's premises as being in the course of his employment
when the injury has its origin in a risk created by the necessity of sleeping or eating away
from home, except when a distinct departure on a personal errand is shown.”


 Texas
courts have accepted the “positional risk” or “but for” test in workers’ compensation
cases.


 That test focuses the court’s inquiry upon whether the injury would have occurred
if the conditions and obligations of employment had not placed the claimant in harm’s
way.


 Whether an employee is paid on an hourly or salaried basis is not dispositive in
determining whether an employee who is injured while traveling is within the course of
employment.



          As a general rule, an injury received while using the public streets and highways in
going to or returning from an employee’s place of employment is not compensable.


 
There are, however, exceptions to the general rule.


 Injuries received while going to or
returning from work have been held to be compensable where the means of transportation
was furnished, or the employee was reimbursed for his travel expenses, by the employer
as a part of the contract of employment, and where the employee had undertaken a special
mission at the direction of the employer or performed a service in furtherance of the
employer's business with the express or implied approval of the employer.



          Once an employment relationship has been terminated, either by the resignation of
the employee or by the employee being fired, an injury incurred at the job site or while
leaving the job site subsequent to the termination is not an injury sustained in the course
of employment, within the meaning of the workers’ compensation act, where the
termination occurs in a place of safety and the employee is not subject to the inherent
hazards arising from the employment itself.


 An exception to this rule occurs when the
employee is required, or reasonably believes that he is required, to remain at or return to
the employer’s premises for his final paycheck or to take care of some other duty incidental
to the termination.



IV. Analysis 
          In her first issue, Bruno challenges the legal and factual sufficiency of the trial
court’s judgment that Charles was not in the course and scope of his employment at the
time of his death. As noted, Trinity had the burden of proof by a preponderance of the
evidence on the course and scope issue.


 Therefore, we begin our review of the record
with a search for evidence that supports the trial court’s finding that at the time of his death,
Charles was not in the course and scope of his employment.
          It is undisputed that around 7:00 p.m. on the evening of January 22, 1999, Charles
was struck by an automobile and killed while walking across Highway 361 in Ingleside,
Texas. He was in Ingleside working as a plumber supervisor on a project for his employer,
J&C Plumbing. The J&C company van, which was inoperable and in need of repair, was
located at an auto parts store parking lot approximately a mile away from the site of the
accident. Charles’s personal van was located at the apartment complex where the crew
was staying; the complex was located across Highway 361 from the jobsite. Charles’s
personal van was also broken down. 
A. Legal Sufficiency
          Trinity contends Charles was not in the course and scope of his employment
because: (1) he had voluntarily terminated his employment on the afternoon of the accident
and was therefore no longer employed by J&C; (2) his injury (being struck by a motorist
while crossing a public highway on foot at night) did not “originate in” his employment; (3)
he was not engaged in any activity while furthering J&C’s business; and (4) his job duties
did not require him to transport the J&C crew back to Houston. Trinity contends Charles
was not working on the company van at the time of his death. Trinity points to the fact that
the company van was at the auto parts store, which was on the same side of the highway
as the jobsite. Thus, working on the company van would not have required Charles to
cross the highway. The accident occurred approximately a mile away from the auto parts
store.
          Steven Scott Clayton, owner of J&C,


 testified that on the afternoon of the accident,
Charles called and said he was quitting his job with J&C. According to Clayton, Charles
said he was having marital problems and was leaving Ingleside to return to his home in
Houston. Charles requested that his check not be delivered to Ingleside because he would
pick it up in Houston. Clayton testified that Charles was not working on the company van. 
He also testified that it was not Charles’s responsibility to transport the crew back and forth
to Houston. Clayton said Charles was not paid for driving time from job to job. 
          In addition, the record contains Clayton’s affidavit, which states that although the
crew normally came home on Fridays, the other crew members were planning to stay in
Ingleside for the weekend because they were almost finished with the project. The affidavit
also states, in pertinent part:
I personally knew that Sean Shaver had made arrangements to go to
Ingleside to deliver checks to the other four employees on Saturday, January
23, 1999 because I knew that Charles Bruno was not taking any of the other
four employees back to Houston with him on Friday, January 22, 1999. 
Sean Shaver intentionally did not bring Charles Brunos [sic] paycheck with
him on Saturday, January 23, 1999, because I knew he would pick his last
paycheck up in person at the Houston office. Additionally, the company was
sending Frank Flores, another supervisor, to Ingleside on Saturday, January
23, 1999, to assume the supervisor role of Mr. Bruno. Mr. Flores was being
brought in on Saturday because the other workers were going to continue to
work the weekend in order to complete the rough-in portion of the job. 
             
          Considering the evidence and inferences in the light most favorable to the finding,
we find that more than a scintilla of evidence supported the trial court’s finding that Charles
was not within the course and scope of his employment at the time of his death.


 We
conclude that even if (as Trinity disputes) Charles was working on the company van at the
time of his death, Clayton’s testimony that: (1) Charles was not responsible for transporting
the crew; (2) no one from J&C directed or instructed Charles to drive back to Houston on
Friday; and (3) Charles was not taking any of the crew back to Houston on Friday night is
more than a scintilla of evidence to support the trial court’s finding.             
B. Factual Sufficiency
          Bruno contends that the evidence is factually insufficient to support the trial court’s
finding that Charles was not in the scope and course of his employment at the time of his
death. Bruno argues that: (1) Charles’s duties required him to remain in Ingleside in order
to return the crew to Houston; and (2) the “undisputed testimony at trial” was that Charles
was repairing the company van prior to his death. The only evidence supporting Bruno’s
version of events is the testimony of Kelvin Diaz, an employee of J&C Plumbing. Diaz
testified that he last saw Charles around 7:00 or 8:00 a.m. on Friday morning. Charles told
him that he was going to run to the auto parts store to get parts to fix the company van
because it was going to be too hard to fix his personal van. Diaz testified that Charles was
supposed to show up at the jobsite to pick up the crew around 7:00 or 8:00 p.m. 
          In light of the entire record, we hold that the evidence is factually sufficient to
support the trial court’s finding that Charles was not in the course and scope of his
employment at the time of his death. Based on the evidence, the trial court could have
determined that regardless of whether Charles was fixing his personal van or the company
van, he could have reasonably believed that he was responsible for transporting the crew
back to Houston. However, the trial court was free to reject Diaz’s testimony and accept
Clayton’s testimony that after quitting his position, Charles was planning to return to
Houston for personal reasons while the rest of the crew remained in Ingleside. We
conclude that there was evidence to support a finding either way. Although we likely would
have reached a different determination than the trial court, the trier of fact is the sole judge
of the credibility of the witnesses and the weight to be given their testimony.


 Where there
is conflicting evidence, the trial court's determination on such matters is generally regarded
as conclusive.


 We, therefore, have no authority to disturb the trial court’s judgment.


 
Because the evidence supporting the trial court’s finding that Charles was not in the course
and scope of his employment at the time of his death is not so weak as to render the
finding manifestly wrong and unjust, we must reject Bruno’s factual sufficiency challenge.


 
Accordingly, we hold the evidence is factually sufficient to support the trial court’s
judgment. We overrule appellant’s first issue.
V. Burden of Proof 
          In her second issue, Bruno contends the trial court impermissibly shifted the burden 
of proof by requiring her to introduce evidence supporting the Texas Workers’
Compensation Commission decision and order. We find Bruno’s contention to be without
merit. At the conclusion of Trinity’s case, Bruno asked for a directed verdict. The trial court
noted that the “only evidence we have [that Charles was working on the company van] is
the early-morning understanding of a co-employee that talked to him at 7:00 in the
morning. If that is the basis for the directed verdict, the directed verdict is denied.” The
court then correctly noted that Trinity was required to prove its case by a preponderance
of the evidence. Later, Trinity’s counsel noted that “[t]he burden of proof is on us.” The
trial court subsequently repeated its observation that Trinity had the burden to prove that
Charles was not within the course and scope of his employment at the time of his death. 
We hold that the trial court did not impermissibly shift the burden of proof to Bruno. We
overrule Bruno’s second issue.
          We AFFIRM the trial court’s judgment.
 
                                                                                                                      
                                                               LINDA REYNA YAÑEZ
                                                                           Justice




Memorandum opinion delivered and filed this the
16th day of December, 2004.